Jason Carr, appearing for appellant Bradley Kiszer, intended to reserve a minute of my time for rebuttal with the court's permission. There are two major themes that permeate this assignment of error, the assignment of error raised by Kiszer, and that is dismay and uncertainty. Dismay because in this, the federal district courts are heavily reliant upon the representations of law enforcement officers. Indeed, to some extent, even defense counsel is. When a law enforcement officer gets up there and says, I pulled somebody over, for example, because their turn light wasn't turned on, there really is no way to refute that absent a third party witness. Sure there is. We have an adversary system. You get a hearing in front of a judicial officer, and he listens to the testimony, makes credibility determination. In this case, he made the credibility determination that the officer was telling the truth and your client was lying. Now, what do you want us to do about that? You want us to overturn that determination and rejudge the credibility? Well, he was absolutely wrong. I mean, this case exemplifies why the system is so dependent on law enforcement testimony, because the law enforcement officer got there and testified there was a lightened crosswalk there. My client got up there and said, no, there wasn't. And, of course, nobody believes my client. So you want us to declare he was clearly erroneous based upon the record that he made? Well, we don't need to, Your Honor, because — Sure we do. It's a finding of fact to which we must defer unless we can conclude based on the record that he was clearly erroneous. Otherwise, you lose, don't you? I disagree with that, Your Honor, because the second report — You know what our case law says, Mr. Kramer? It does, Your Honor, but that's not the situation we have here. But we shouldn't apply our case law to the facts of this case. But those aren't the facts of this case, Your Honor. The second report and recommendation does not rely upon the fact — It's a standard of review, counsel. You're arguing to us that we should rejudge the credibility of the arresting officer and find that he was not credible and your client was telling the truth. That's what I'm hearing in your argument. Am I missing your argument? Apparently, yes, Your Honor, because the magistrate — Well, why don't you lay it out? What is it you would like this Court to do that is within our power to do? Well, the ultimate decision here, Your Honor, is whether or not the government proved that there was a law violation here to justify the stop of Mr. Kaiser. In the first evidentiary hearing, the government presented testimony that there was a light and crosswalk there. Under the Nevada Code — I mean, the Las Vegas Municipal Code, you must use a crosswalk if you're between two adjacent operating stop traffic control devices, traffic signals. At the first evidentiary hearing, the government presented testimony from the officer that there was a traffic signal there and a crosswalk. The defense objected to that, and our client testified there wasn't. After the first report and recommendation came out, we actually acquired testimony from the city engineer and presented it in an — in an objection, stating, no, in fact, there was no crosslight there at the time of the jaywalking or a marked crosswalk. Okay. But isn't the issue — isn't the issue reasonable suspicion? Did the officer have reasonable suspicion to believe that this person jaywalked? Isn't that what this is all about? Your Honor, I would say it's more of a probable cause issue. Generally, reasonable suspicion is we believe there's criminal activity afoot or we want to investigate criminal activity. Here, the question is, did he jaywalk or not? There was no more investigation to do at the time of the seizure. The officer was under the belief, or he testified that he was under the belief that my client jaywalked, and that's why he effectuated the stop. My client was jaywalking — There's really no doubt that the officer honestly believed that he was jaywalking. The real question is whether there was a mistake in law that's provable on the record, right? That is a correct statement, I believe, Your Honor. Or, more specifically, I would say the issue is, did the government prove there was any law violation here? And it becomes a mixed question of law and fact because of this business district problem that we have here. The government's original rationale was this was jaywalking, clearly, because he did it with an adjacent operating traffic control signals. That was their entire theory. Well, it was proved that the testimony, the facts supporting that were erroneous. There was no officer. I don't think the officer was mistaken about that. That's sort of water under the bridge. I mean, it's a good advocacy point. But, I mean, really, don't you have to — the question is whether the record shows this is a business district or not, right? Right, which gets to my second theme, which is uncertainty. And there's a lot of uncertainty in this record whether this is a business district. And why do I say that? Well, first of all, the Las Vegas Municipal Code does not define business district. It does have a catch-all provision that says, well, undefined terms, we look to the NRS, a certain chapter 484 of the NRS, the Nevada Revised Code. We look to the Nevada Revised Code, and there is, indeed, a definition of business district, which is contained at the back of the appellant's opening brief in the appendix. Business district — well, not businesses, but the jaywalking statute says there's two ways to jaywalk. One, to walk between adjacent operating traffic control devices, or two, to cross in — to cross outside of a marked or unmarked crosswalk within a business district. Now, there's a lot of uncertainty in this record what is a business district, because although we have this incorporation from the Las Vegas Municipal Code, the EOR specifically said that a business district is designated by the Las Vegas City Council, and not only is it designated, it's put in a repository for city officials to look at and to know that this has been designated a business district. Now we get to where I was headed with this, which is we don't know one way or the other on this record whether this has been designated by the city council or not, right? No, we don't. And to my knowledge, it is not. But where does that leave us? Well, the government's going to say that that designation, either the engineer was wrong as a matter of law, or he just had his facts wrong, or it's irrelevant, would be the government's retort to that. They're going to say that this is a self-executing definition, that the definition in NRS 484.027 is self-executing. Well, I'm interested in what you're saying. I'll ask them what they — I think that that's a — what I would say is I have no idea. There's no — there's very little Nevada law at all. Let's just take that at face value, though. What does that mean on this record? I would say that any dearth in the factual or legal presentation before this court is properly charged to the government. We still do not know whether or not this is a business district. And there's more uncertainty than what we've already talked about. Because if we look at the definition — Or is it — was there a reasonable suspicion in the mind of the officer at the time he stopped Mr. Kaiser that he was engaged in jaywalking? Your Honor, this gets into the distinction between the mistake of law and mistake of fact we see in cases like Twilley and King. Well, I don't think — maybe you are. Are you arguing that the officer has to carry a tape measure with him and see if there's 300 feet of business facade before he makes the initial detention of Mr. Kaiser for jaywalking? Well, that seems unreasonable, Your Honor. But the law is clear — Yes, I agree. The law is clear, though, that a mistake of law, no matter how reasonable, if that was the basis for the stop, negates the validity of the stop. That's a fact question, isn't it? In other words, in order to determine whether or not it's a business district, the statute speaks of an actual length of building business facade. It has to be, what is it, 300 feet in length or more? Three — that's another uncertainty is how do you apply this definition? It's three — I guess you open the trunk of your car and you get out that little wheelie device that they use at traffic accident scenes and you measure off 300 feet. From where? That can't be the law in this case, can it? Exactly. From where? Where do you measure, Your Honor? I have no idea. I guess from the end of the building to the other end of the building. And if it's more than 300 feet, then I guess it meets the statute. But what would be the operative building? I guess that's my point here. But that — Well, let's take it. There's nothing in this record that indicates this officer used a business district justification to all or anything at all. Just to get back to my question, you said it probably falls to the government to prove. Analytically, how do we do that? I mean, I'm getting back to Lopez Soto, which is the key case here, it seems to me. And in Lopez Soto, it was pretty clear, the statute said, where the sticker had to be. And the officer reasonably believed there was a violation. What the officer was wrong is a matter of law. And that's pretty clear under a case law. Here, we don't know. So where does that leave us? Assuming that we don't know. It leaves us in a conundrum. First of all, I would not concede that we have to even engage in that allegation without any proof that that was the actual legal justification relied upon by the officer. Putting that aside, even if that argument is rejected, what the Court has to do somehow is determine whether or not the officer was right about the law. And I would submit that if this Court cannot determine that, the government has failed in its burden of proof because they have the burden to justify. Stop. Mr. Carlson, what do we do with the district court's determination at the conclusion of the hearing that applying Terry v. Ohio, there was reasonable suspicion based upon the furtive conduct of your client, the fact that he wouldn't take his right hand out of his pocket at 3 o'clock in the morning when the officer stopped him and told him repeatedly to get your hand out of your pocket? I mean, that's all very traditional Terry-type investigative stop fact-finding, is it not? Your Honor, I've been – I don't believe that the Court made a factual finding on that basis. If we look at the second report recommendation. Doesn't the Court talk about that? It starts on 221, and this is – which report recommendation are you referring to, Your Honor, the first or the second one? Because there were two. Well, I can't remember which of the two it was, but as I recall, the Court actually referred to the fact that he was carrying the CD case, he darted out from between the building, he had his right hand in his pocket, and he wouldn't keep it – he wouldn't take it out. And that was all in connection with the Court's determination that this was a lawful Terry stop. Your Honor, I don't believe that's a fair reading of the Court's ruling, which Now, remember, we have to – the stop has to be justified at the moment of seizure. In this case, that's when the officer yells, hey, you stop. Now, he learned a lot of information after he yelled that, and there was compliance, and the individual started walking toward him. But all that information, of course, is not relevant to our initial inquiry here as to was the stop justified at the second. Thank you, counsel. Your time has expired. Yes. Thank you. Thank you, Mr. Carr. May it please the Court. Darren LaHood representing the United States from the District of Nevada. It's clear at looking at the facts of this case that the determination of the facts that was made by the local district judge are to be reviewed by the clearly erroneous standard here. And when we look at that, Your Honor, we have to remember this district court heard two separate hearings, heard from three separate officers – I'm sorry, one officer and two separate witnesses, and made that determination after a lengthy and reasonable amount of information before the judge at that time to determine that, in fact, this was a business district. Okay. Mr. LaHood, before we get into that, let's – may we start where Judge Tallman left off on the Terry stop, and let's start there first. Let's forget about the jaywalking. Do you – is it the government's contention that, independent of any concern about jaywalking, that there – this was a permissible Terry stop? Your Honor, I think it raises reasonable suspicion when, 3 in the morning, you see somebody dart across four lanes of traffic in an area that has lots of business. Now, we also have to remember, this is a 24-hour casino restaurant that he comes from, darts across at 3 in the morning. And I believe in – May I stop you there? And did the – in your view, did the magistrate judge make any findings on a Terry stop by itself? Your Honor, I believe that was – his decision was predicated upon the fact that he believed there was a jaywalking violation there, along with these other factors of, you know, being 3 in the morning, darting across four lanes of traffic, carrying something in his hand. All that raised suspicion within the officer's mind at that time. And when – So – so your position is that the magistrate judge did not make an explicit independent finding on Terry, but wrapped it in. Your belief is that it probably justified Terry stop regardless of the violation of the jaywalking statute. Well, I think the – Is that the government's position? It is, Your Honor. But I would also add, I think the district court found there was probable cause also. Beyond reasonable suspicion, they found that there was probable cause here. Well, probable cause for the jaywalking violation. Yeah. There's no such thing as probable cause for a Terry stop, is there? I mean, it's reasonable suspicion. That doesn't require probable cause. That's correct. But I believe they made both of those determinations, a reasonable suspicion and probable cause. Right. No, but I'm segregating out the probable cause for the jaywalking. I just wanted to make sure I understood what your position was on just a pure Terry stop. There's no – the officer has – I'm just asking you to assume hypothetically he has no intention of arresting this guy for jaywalking, doesn't even think he's jaywalking. Does he have enough for a Terry stop? Your Honor, I believe if we look at the Wren case, when we look at an objective – what a reasonable, objective officer would do in this situation, I think it does qualify as a reasonable Terry stop, Your Honor, in looking at all the factors, not just one, but the totality of everything that happened on this early morning. And I think if you look at that and you look at the Wren decision and you look at that objective view, not necessarily what was in his mind at the time, but objectively, I think it does qualify for the reasonable suspicion standard, Your Honor. And that would be our position. Let me move to the business district, then. I find this a really puzzling case, because at least it's been some time now, but when I did work for cities and counties, they defined business districts, and I think the engineer's testimony at 190 that the business district is defined by the planning department, the city council votes, is consistent with at least my experience in that. Yet we don't know. The record is devoid of this. It puzzles me. Well, my response to that, Your Honor, is this particular person, Mr. Schneider, that testified was not an expert on what the city council does. And I think he even indicates that. That's the only thing in the record, though, and I think he's probably right. Well, Your Honor, if you look at what the business district is defined at, I think you can take that definition and a local judge or a district judge at that level can look at that, and it's self-executing. They can determine by the facts that happened here, looking at the photos, looking at hearing the evidence by the witnesses. Look at that definition. I think it's clear when you apply the facts to that definition, this is a business district. Isn't that what the magistrate judge found? I'm looking at ER-223 where he – in his findings of fact where he recites the testimony of the city engineer, Michael Schneider, at the May 4 hearing made clear that businesses extend for over a quarter mile in both directions from the Marialdo intersection on the south side of Charleston within a marked or unmarked crosswalk or violate the ordinance. I would agree with that, Your Honor, that that was the determination he made, and that's uncontroverted by anything the defense said, that a quarter mile in each direction there are businesses. Excuse me, though, counsel. The problem I have with that is that, as far as I can tell, and you can correct me, is that the testimony was based on the businesses that existed some years later and not at the time. No. I mean, at least, you know, I read through it, and I didn't see any marker or indication that the – that the measurements were made as of the time of the arrest. Well, Your Honor, I would – He said there were businesses along the district. There were – and if you can point to a citation, I'm happy to look at it. Well, Your Honor, I would point to Mr. Schneider's testimony in which he – he went through each corner that was represented at that intersection. And when he went through that analysis, especially on ER-172, he talked about the in place of April of 2003, which was three months before this, that that had been developed by the Piccoli Tavern subcontractor. Looking at ER-172 and 173, I think he goes through each of the corners there. He addresses the southeast corner, the southwest corner, the northwest corner. He does not address the northeast corner. But I think if you look at that, he talks about at the time, which in the case of the corner at southwest, it was February 2002. The corner of southeast was April of 2003, in which he indicates in his testimony there are clearly businesses that were developed there. And if you look at the photos that were presented to him at that time in the exhibits, he talks about, and I think it's uncontroverted, that a quarter mile in each direction, there are businesses. There's a shopping center. And I'd also point out that in defense counsel's argument to the judge on ER-129, he admits this is a busy shopping center across the street from where this happened. That's his statement to the magistrate in his summarization of why they thought the evidence should be suppressed. So by his own admission, he talks about a busy shopping area. I would just submit to the Court that I believe Mr. Schneider indicated that at that time on at least two of the corners, there were significant businesses located there. I would also argue one other point. If you read defense counsel's brief, you would think that this is some abandoned desert road. I mean, this is a road that where there's four lanes of traffic. There's a median. There's sidewalks. There's a casino that's open 24 hours. There's a Roy's restaurant that the defendant even admitted was there. And when we have all the other evidence of the shopping area, I think it's clear that the Court made the proper determination that this was a business district. If there are no further questions. Roberts. Thank you, counsel. No questions. The case just argued will be submitted for decision, and we will hear
judges: O'scannlain, Thomas, Tallman